LESLIE R. WEATHERHEAD, WSBA #11207
BRYCE J. WILCOX, WSBA #21728
GEANA M. VAN DESSEL, WSBA #35969
JEFFREY R. SMITH, WSBA #37460
LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Phone: (509) 324 9256
Email:  LeslieW@leehayes.com
        Bryce@leehayes.com
        GeanaV@leehayes.com
        JeffreyS@leehayes.com

*Counsel for Defendant Merchant Services Direct, LLC*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | No. CV-13-279-TOR |
| Plaintiff, | DECLARATION OF CHRIS MANFRED RE MOTION FOR TEMPORARY RESTRAINING ORDER |
| vs. | |
| MERCHANT SERVICES DIRECT, LLC, a Washington Limited Liability Company, also dba SPHYRA, INC., *et al.*, | |
| Defendants. | |

CHRIS MANFRED declares under penalty of perjury that the following is true and correct:

1.  I am over eighteen years of age and am competent to testify to the matters herein.

DECLARATION OF CHRIS MANFRED - 1

2. I am currently employed by Sphyra, LLC, which was formerly called Merchant Services Direct (and which for brevity I will call "MSD" in this declaration).

3. I make this declaration based upon my personal knowledge and based upon the information contained in MSD's business records. And, if called upon as a witness in this case, I could and would testify competently to the truth thereof.

4. I have been employed by MSD since June 2010. I worked as a sales agent for MSD from approximately June 2010 to May 2011. Then I was promoted to an Assistant Manager. In that role I interviewed prospective agents, I made hiring decisions regarding new, local agents and I trained local agents who were stationed out of the Spokane office. I held that Assistant Manager role until approximately August of 2011 when I was promoted to Manager of the Local Office. Then I moved to Portland, Oregon in September 2012 for approximately seven months where I was operating an office overseeing independent contractors for MSD. I was there until February 2013. I became the Acquisitions Director for MSD in March 2013. In that role, I now manage inside sales for MSD and I oversee all recruiting of independent sales offices and independent sales representatives across the country.

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

5. I have read the declaration of Kyle Charlson. Many of the statements in his declaration are false and incomplete, and I make this declaration to clarify and correct those statements.

6. In paragraph 8 of his declaration, Mr. Charlson states that Kyle Dove is the Chief Executive Officer of MSD. That is not true. Mr. Charlson also says that Shane Hurley is the Director of Operations for MSD. That is incorrect. Shane Hurley has never been the Director of Operations, and is actually the CEO. Ariel Allen is the Operations Manager.

7. The Independent Sales Contract used today by MSD is different from the contract that Mr. Charlson signed.

8. It is true that Mr. Charlson worked for MSD from October 2011 to December 2011, in Spokane, Washington. At that time I was Mr. Charlson's direct supervisor.

9. Before Mr. Charlson was hired, he participated in an initial interview process with numerous other applicants. He was brought back for a second round of interviews, but not all of the applicants were asked back.

10. Mr. Charlson's second interview lasted an entire day. During that day, Mr. Charlson, and other applicants who were asked back participated in a full day of observation. During that day, other employees at MSD and I spent the first half of the day talking to Mr. Charlson and the other applicants about MSD:

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

what services it provides, what products it offers, what makes MSD different from its competition, MSD's philosophies and values, etc. During the second half of the day, Mr. Charlson and the other job applicants were prepared for what they could expect if they were hired to work as an employee of MSD. During the second half of the day they are given the tools necessary to perform solicitation calls to prospective merchants who might be interested in using MSD services. Mr. Charlson was given instructions about how to make introduction calls and listened to experienced agents make calls. After that, I observed him make approximately 40 solicitation calls on his own. During and after each call, he received feedback from me or an experienced agent. At the end of that day, I sat down with Mr. Charlson and talked to him about his thoughts on the experience, and whether he thought he wanted to work in the sales industry for MSD. Some of the applicants were not invited to work for MSD. Ms. Charlson was offered the position.

11. If, at the end of the second day, I decided to hire an agent, it was then that the detailed training process started. This was the case for Mr. Charlson. The training process used today by MSD is significantly different than the training process used in 2011 when Mr. Charlson worked for MSD. In 2011, when Mr. Charlson was working for MSD, the first hour of every day that the agents spent at the office was designated for training. Agents practice role

DECLARATION OF CHRIS MANFRED - 4

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

playing using helpful phone scripts until they get used to making introduction calls. After the first 20 minutes of the training hour, the leaders are called to run an "impact," MSD's name for a brief training seminar. Each morning the impact covers a different topic. Some examples of those topics were as follows: terminal training, differences between types of equipment offered by MSD, ATM and sales systems, wireless and phone line terminals, the different options the customer has for paying for the equipment (like leasing, purchasing or borrowing with an insurance program), how to read merchants' previous processing statements to accurately quote savings, role playing demonstrating how to field different questions, pricing options and details for products and services.

12. I have an entire binder full of outlines for the various impact training sessions that were completed with sales agents each morning.

13. In those impact sessions, the agents were required to attend and take notes.

14. In 2011, agents had access to Centerpoint, the CRM in which we could access copies of all paperwork needed for their work in the field signing up and/or speaking with merchants. Centerpoint contained an entire folder detailing the impact sessions and the outlines, and were available at all times.

15. Attachment B to Mr. Charlson's declaration—a document labeled National Discount Plan—was a pricing plan that was only used by MSD for a

short time. It was not in use at the time that Mr. Charlson was working for MSD from October to December 2011. He was not trained to use that pricing plan and it had not been part of the training materials given to sales agents for a long time. I was not aware Mr. Charlson was using that pricing plan, and if he was, it was a mistake. MSD did eventually learn that other agents mistakenly used old plan information that was left in their binders.

16. When MSD realized that some agents were still using the old National Discount Plan for pricing, I personally went through all of the binders for the agents I supervised and removed that pricing plan. The National Discount Plan was also removed from Centerpoint so that agents could not accidentally access and use an outdated pricing plan.

17. Paragraph 19 of Mr. Charlson's declaration is personally disturbing because it suggests that Mr. Charlson was trained to mislead merchant customers, and that is simply wrong. I never trained Mr. Charlson to act or think that way. Further, I never saw Mr. Charlson or any other agent actually highlight a merchant's application papers. In each agent's personal training materials, some agents carried a copy of the merchant application that highlighted each section of the application where the merchant needed to initial or sign, or where the agent had to fill in specific pricing details unique to each customer. They used that form for their own purposes; they did not give that to the merchant. Those agents that

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

carried a highlighted copy of the application used it as a tool to ensure that they completed the application with the merchant.

18. Paragraph 22 in Mr. Charlson's declaration is misleading in that it fails to make an important distinction about pricing. Mr. Charlson is correct in that MSD did charge 0.5%, but that is in addition to the interchange rate. MSD can never control or limit the interchange rate (the rate that is charged by VISA and MasterCard).

19. It is impossible for me to respond to the assertions in paragraph 23 of Mr. Charlson's declaration because he does not identify the "friend" and former MSD customer who Mr. Charlson alleges was misled or confused. But, if Mr. Charlson wrongly quoted his friend that the *only* fee he would be charged was MSD's 0.5% fee, of course Mr. Charlson's friend would have been upset because that is not correct. To reiterate, MSD charges 0.5% in addition to the interchange rate charged by VISA and MasterCard.

20. In paragraph 24 of his declaration, Mr. Charlson says that he didn't know that the "interchange fee" existed. That is a description of the interchange fees typically charged in relation to different types of transactions. I don't understand how that is possible since he was specifically trained on interchange fees. It was part of the impact training that I completed with Mr. Charlson and other agents. Also, information about the interchange rate was available on

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

Centerpoint. Further, Mr. Charlson's assertion that he did not understand that the interchange fee existed is inconsistent with the allegations he makes in paragraph 22 of his declaration: "I remember four different percentage amounts, depending on whether the merchant wanted to accept debit card transactions, credit card transactions, payment over the telephone or sales over the Internet." Those four rates he references are different "effective rates" we taught sales reps that are directly related to the different interchange rates based on how a card is run (i.e. via the internet, debit with the pin number entered, over the phone, etc…).

21. Mr. Charlson's statements in paragraph 26 of his declaration are incomplete, misinformed, and inaccurate. Mr. Charlson was never taught to mislead customers about terminals, or anything else. It is wrong to mislead customers, and it is contrary to the best interests of MSD and agents, because both do better financially if they continue to receive fees from customers over the long term. We are working hard at MSD to figure out how to do a better job of keeping customers with us longer. Contrary to Mr. Charlson's limited experience (he worked for MSD less than three months), merchants' terminals do get locked by processing providers; some processors are able to prevent terminals from being reprogrammed. But, at the same time, MSD frequently reprograms terminals because it is sometimes cheaper for the merchant to reprogram a

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

terminal rather than lease or purchase a new terminal. If given time, MSD's deployment department could gather those statistics.

22. Of course the sales agents were allowed to lease terminals to merchants when the merchant wanted a terminal with newer technology or when the merchant's old terminal was not able to be reprogrammed by MSD. The paperwork that Mr. Charlson and other sales agents used in the field clearly set forth the different pricing options for new terminals. If a merchant was leasing a new terminal, the merchant had to execute a lease; the form clearly set forth the terms of the lease. Further, the lease it not effective until MSD completes a recorded conversation with the merchant to ensure that the merchant clearly understands the details of the lease.

23. Mr. Charlson's statements in paragraph 29 of his declaration are false and they are contrary to the written training materials provided to sales agents. They also contradict the training I personally provided to Mr. Charlson.

24. Contrary to Mr. Charlson's statements in paragraphs 29 and 30 of his declaration, merchants were never denied a copy of the materials they signed or the papers governing their contract with MSD. In 2010 and 2011, MSD used carbon copy applications; one copy was for the merchant and one copy was for MSD. In late 2011, MSD transitioned to using application forms that were available for the sales agents to print from Centerpoint. The agents were required

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

to give the merchant a copy if the merchant wanted a copy at the time of signing. Further, MSD places a welcome call to each new merchant customer; as a part of that process it was standard procedure for MSD to send merchants a copy of all of their account paperwork.

25. I am personally upset at the allegations in paragraph 33 of Mr. Charlson's declaration because he suggests that when I was in charge of training him, I never performed any training or oversight; that is simply not true. Mr. Charlson personally spent two weeks shadowing me when he first started working for MSD. During the first week, Mr. Charlson accompanied me on every appointment I made in the field and he watched me communicate with the merchants. After each meeting with a merchant, we discussed how the meeting went. During the second week, I let Mr. Charlson run many of the merchant meetings. We would then discuss the meeting and I critiqued his performance. Mr. Charlson also ignored the fact that during the entire time he was working for MSD, he attended training sessions three mornings a week (Monday, Tuesday and Wednesday). On either Tuesdays or Wednesdays after work (from 5:00 p.m. - 6:30 p.m.) the agents were required to participate in additional mock appointments with me and other experienced sales agents so they could gain experience communicating with a variety of different merchants and understand a variety of different rate options that applied to different types of merchants. On

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

Thursdays and Fridays, Mr. Charlson and the other agents were in the field going to the appointments they set earlier in the week

26. Mr. Charlson's statements about the pricing of terminal leases in paragraph 35 of his declaration are mistaken. Sales agents were never allowed to sell merchants terminal leases for hundreds or thousands of dollars. MSD has always had a ceiling on terminal leases—terminal leases never exceeded $100 per month. In 2010 and 2011, MSD allowed some flexibility; leases could be executed for $30 - $100 per month. In 2012, however, MSD changed that; now terminal leases can only be executed for $20 to $60 per month.

27. I consider myself an ethical person and treat my job duties and responsibilities very seriously. I take the allegations in Kyle Charlson's declaration personal since I was in charge of his training; it does not accurately describe the policies or attitudes or ethics of MSD. I believe in MSD and I believe it strives to provide quality service and value for its customers and we do that through training our sales agents. It is in MSD's best interest to use highly trained sales agents because those agents will help MSD retain happy customers.

//

//

//

//

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

| | |
|---|---|
| 1 | I declare under penalty of perjury under the laws of the United States that |
| 2 | the foregoing is true and correct. |
| 3 | |
| 4 | Dated this 9th day of August, 2013, at Spokane, Washington. |

*[Signature]*
CHRIS MANFRED

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

# CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of August, 2013, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Nadine Samter | nsamter@ftc.gov |
| Jennifer Larabee | jlarabee@ftc.gov |
| Carl Oreskovich | carl@ettermcmahon.com |
| | Jodi@ettermcmahon.com |
| | jody@ettermcmahon.com |
| Ryan D. Yahne | ryan@pyklawyers.com |
| | bbrown@pyklawyers.com |
| Michael Thurman | mthurman@loeb.com |
| | mortiz@loeb.com |
| Bryce Wilcox | Bryce@leehayes.com |
| | joann@leehayes.com |
| | Julie@leehayes.com |
| Geana Van Dessel | GeanaV@leehayes.com |
| | LaurieD@leehayes.com |
| Jeffrey R. Smith | jeffreys@leehayes.com |
| | joann@leehayes.com |
| | Julie@leehayes.com |
| Michael L. Mallow | mmallow@loeb.com |
| | vgarza@loeb.com |

///

///

///

///

DECLARATION OF CHRIS MANFRED - 13

I further certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Christine M. Reilly
Loeb & Loeb LLP
10100 Santa Monica Blvd; 22nd Floor
Los Angeles, CA 90067

                                     *s/ Geana M. Van Dessel*
                                       Geana M. Van Dessel

DECLARATION OF CHRIS MANFRED - 14

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979