UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>               Plaintiff,<br><br>  v.<br><br>MERCHANT SERVICES DIRECT, LLC, et al.,<br><br>              Defendants. | NO: 13-CV-0279-TOR<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND APPLICATION FOR APPOINTMENT OF A TEMPORARY RECEIVER |

BEFORE THE COURT are Plaintiff's Motion for Temporary Restraining Order (ECF No. 8) and Application for Appointment of a Temporary Receiver (ECF No. 9), as well as Defendant Merchant Services Direct's Motion to Strike (ECF No. 66) and Motion to Expedite (ECF No. 67). These matters were heard with oral argument on August 12, 2013. Nadine S. Samter and Jennifer Larabee appeared on behalf of the Plaintiff. Leslie R. Weatherhead appeared on behalf of Defendant Merchant Services Direct, LLC. Michael L. Mallow and Ryan D. Yahne appeared on behalf of Defendants Kyle Dove and Boost Commerce, Inc.

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER ~ 1

Carl J. Oreskovich appeared on behalf of Defendants Shane Hurley and Generation Y Investments, LLC.  The Court has reviewed the briefing and the record and files herein, and is fully informed.  This Order will memorialize and supplement the Court's oral ruling at the conclusion of the hearing.

## BACKGROUND

Plaintiff Federal Trade Commission ("FTC") has sued to permanently enjoin Defendants from engaging in business practices which allegedly violate Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a).  In the instant motion, the FTC seeks an order temporarily restraining Defendants from violating the FTC Act pending a hearing on whether a preliminary injunction should issue.  In conjunction with the motion, the FTC also requests that the Court freeze Defendants' assets and appoint a temporary receiver to run Defendants' businesses.  Defendants collectively oppose any form of temporary injunctive relief, including an asset freeze and the appointment of a temporary receiver.

## DISCUSSION

**I.   FTC's Motion for TRO and Appointment of a Receiver**

Section 5(a) of the FTC Act prohibits, *inter alia*, "unfair or deceptive acts or practices in or affecting commerce."  15 U.S.C. § 45(a).  An act or practice is "deceptive" within the meaning of Section 5(a) if the practice is likely to mislead consumers acting reasonably under the circumstances in a way that is material.

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER ~ 2

*FTC. v. Cyberspace.Com, LLC*, 453 F.3d 1196, 1199 (9th Cir. 2006). Proof of actual deception is not required to establish a violation of the statute; any statement which has a tendency to create a misleading impression can suffice. *Trans World Accounts, Inc. v. FTC*, 594 F.2d 212, 214 (9th Cir. 1979). "A misleading impression . . . is material if it involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Cyberspace.Com*, 453 F.3d at 1201 (quotation and citation omitted).

Section 13(b) of the FTC Act authorizes the FTC to bring an action in U.S. District Court for temporary injunctive relief whenever the FTC "has reason to believe that any person, partnership, or corporation is violating, or is about to violate, any provision of [the FTC Act]." 15 U.S.C. § 53(b)(1). To be entitled to such relief, the FTC must make "a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, [an injunction] would be in the public interest." 15 U.S.C. § 53(b). In deciding whether the FTC has made a "proper showing" of entitlement to injunctive relief, a court must independently assess whether violations are imminent. *See FTC v. Simeon Mgmt. Corp.*, 532 F.2d 708, 713-14 (9th Cir. 1976) (district courts are compelled to make an "independent determination" as to whether a defendant "is violating, or is about to violate" a statute within the FTC's enforcement jurisdiction).

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER ~ 3

Section 13(b) "places a lighter burden on the Commission than that imposed on private litigants by the traditional equity standard; the Commission need not show irreparable harm" to obtain temporary injunctive relief. *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1233 (9th Cir. 1999) (quotation and citation omitted). In evaluating a motion under this more lenient standard, a court must simply "(1) determine the likelihood that the Commission will ultimately succeed on the merits and (2) balance the equities." *Id.* (quotation and citation omitted). Under the second prong of this analysis, public interests are generally entitled to stronger consideration than private interests. *See FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989) ("[W]hen a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight.").

A court's authority to grant injunctive relief under Section 13(b) includes "all the inherent equitable powers . . . for the proper and complete exercise" of the court's equity jurisdiction. *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1112 (9th Cir. 1982) (quotation and citation omitted). One such power is the authority to freeze a defendant's assets. *H.N. Singer*, 668 F.2d at 1113; *FTC v. Evans Prods. Co.*, 775 F.2d 1084, 1088-89 (9th Cir. 1985). As the Ninth Circuit emphasized in *H.N. Singer, Inc.*, an order freezing assets is a form of "ancillary relief" rather than a primary remedy. As such, an asset freeze may only be ordered when necessary to

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER ~ 4

preserve the efficacy of *other* forms of equitable relief. *H.N. Singer*, 668 F.2d at 1112 ("[T]he authority to freeze assets by a preliminary injunction must rest upon the authority to give a form of final relief to which the asset freeze is an appropriate provisional remedy."); *FTC v. Sw. Sunsites, Inc.*, 665 F.2d 711, 718 (5th Cir. 1982) ("In the exercise of this inherent equitable jurisdiction the district court may order temporary, ancillary relief preventing dissipation of assets or funds that may constitute part of the relief eventually ordered in the case."). Before ordering a defendant's assets frozen, a court must carefully balance the potential benefit to injured consumers against the potential for serious disruption of the defendant's business:

> Freezing assets under certain circumstances . . . might thwart the goal of compensating investors if the freeze were to cause such disruption of [the] defendants' business affairs that they would be financially destroyed. Thus, the disadvantages and possible deleterious effect of a freeze must be weighed against the considerations indicating the need for such relief.

*H.N. Singer*, 668 F.2d at 1113 (quotation and citation omitted); *see also Evans Prods.*, 775 F.2d at 1088-89 (suggesting that the FTC must make a showing of "irreparable injury" when moving to freeze the defendant's assets).

A court's inherent authority under Section 13(b) also extends to appointing a receiver to run the defendant's business. *World Wide Factors*, 882 F.2d at 348; *see also FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1432 (11th Cir. 1984) (holding that district courts have "the inherent power of a court of equity to grant ancillary

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER ~ 5

relief, including freezing assets and appointing a Receiver, as an incident to [their] express statutory authority to issue a permanent injunction under Section 13 of the Federal Trade Commission Act."). There is little published authority addressing the circumstances under which a receiver may be appointed. Nevertheless, the appointment of a receiver, like an order freezing assets, is a form of "ancillary relief" which may only be granted to preserve the efficacy of a *different* remedy. *U.S. Oil & Gas Corp.*, 748 F.2d at 1432. Hence, the considerations discussed above in conjunction with asset freezes—*i.e.*, the need to consider "disadvantages and possible deleterious effect[s]" of the remedy—apply with equal force to requests for the appointment of a receiver. *H.N. Singer*, 668 F.2d at 1113.

### A. Likelihood of Success on the Merits

To obtain temporary injunctive relief under Section 13(b), the FTC must demonstrate a likelihood of prevailing on its claim for a permanent injunction barring Defendants from committing *future* violations of the FTC Act. *Simeon Mgmt.*, 532 F.2d at 714. This necessarily requires the FTC to demonstrate that the violations referenced in its Complaint are likely to recur. *World Wide Factors*, 882 F.2d at 347; *Evans Prods.*, 775 F.2d at 1087-88. Because the FTC "cannot base its request for injunctive relief under [Section] 13(b) on evidence of past violations," whether the FTC is likely to prevail on its claims arising from prior alleged misconduct (*i.e.*, for rescission, restitution, refunds and disgorgement) is not

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER ~ 6

directly relevant to this analysis. *World Wide Factors*, 882 F.2d at 347 (citing *Evans Prods.*, 775 F.2d at 1087). In other words, if the FTC fails to establish that past violations are likely to recur, the only relevant consideration is whether "ancillary" relief in the form of an asset freeze and/or the appointment of a receiver is necessary to preserve effective relief for injured consumers. *Evans Prods.*, 775 F.2d at 1088-89.

On the present record, the FTC has failed to demonstrate a likelihood of success on its claim for permanent injunctive relief. As Defendants correctly note, much of the evidence submitted in support of the instant motions is substantially outdated. When this "stale" information is excised from the materials, there is little to suggest that the violations alleged in the FTC's Complaint are likely to recur. Indeed, the FTC appears to have taken the position that future violations are simply a foregone conclusion based upon the number of prior alleged violations. At least at this juncture, the Court cannot agree. First, there is reason to believe that the prior alleged violations were not nearly as pervasive as the FTC contends. Based upon the number of active customers serviced by the Defendants during the relevant time periods, the number of complaints referenced in the FTC's materials is not necessarily indicative of widespread deception. Second, the Defendants appear to have taken meaningful steps toward improving customer satisfaction over the past two years by, for example, hiring a number of in-house customer

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER ~ 7

service representatives, implementing and enforcing a code of ethics, and creating additional training materials. Defendants have also terminated several sales agents who have been the subject of repeated customer complaints. Whether these steps will prove successful over the long term remains an open question; nevertheless, the Court cannot conclude that future violations are *likely* to occur on the present record.

The FTC has also failed to establish that freezing the Defendants' assets and/or appointing a receiver is necessary to preserve effective relief for injured consumers. As a threshold matter, there is no support for the FTC's assertion that an asset freeze is necessary to prevent Defendants from secreting away assets. Contrary to the FTC's assertions, the fact that Defendants Hurley and Dove have withdrawn funds from Merchant Services Direct's corporate accounts in the past is not improper. As Defendants correctly note, members of an LLC are free to make withdrawals from corporate accounts at their discretion. It also bears noting that Defendants have been in business since 2008 and currently have approximately 7,500 paying customers. It seems rather unlikely that Defendants will make any attempt to "cut and run."

Moreover, the FTC has not meaningfully quantified the amount of damages attributable to the alleged violations. When prompted by the Court for an estimate, counsel for the FTC estimated that, while somewhat difficult to quantify, the figure

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER ~ 8

was probably "in the millions of dollars." In reaching this estimate, however, counsel assumed that each and every transaction was "tainted" by the Defendants' alleged misconduct. For the reasons discussed above, the Court is not willing to make a similar assumption on the present record. Given that there has been no meaningful quantification of potential damages, the Court finds it difficult to evaluate whether an asset freeze is truly necessary in order to preserve effective relief for injured consumers.

Finally, there is no evidentiary basis for appointing a temporary receiver. At oral argument, the FTC asserted that Defendants have created a "culture of fraud" which only a receiver can reverse. The Court is not persuaded. As noted above, Defendants have been in business since 2008. Over the past two years, they have taken meaningful steps toward improving customer relations. At present, they have approximately 7,500 active customers, and their customer retention rate is slightly better than the industry average. Although there is clearly room for continued improvement, the appointment of a receiver cannot be justified on the present record.

**B. Balancing of the Public and Private Interests**

With regard to the second prong of the Section 13(b) inquiry, the Court finds that a balancing of the equities weighs in Defendants' favor. In reaching this finding, the Court notes that granting the FTC's requested relief would seriously

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER ~ 9

jeopardize Defendants' ability to stay in business. Most notably, appointing a receiver would give iPayment grounds to terminate its contract with Merchant Services Direct, thereby rendering the latter unable to service its existing customers. Given that the FTC has not established a high likelihood of success on the merits, the risk of putting Defendants out of business is unacceptable. Accordingly, the FTC's motions are denied.

## II. Defendant Merchant Services Direct's Motion to Strike

Defendant Merchant Services Direct has moved to strike as inadmissible portions of the declarations submitted by the FTC in support of its Motion for Temporary Restraining Order and Appointment of a Temporary Receiver. At this early stage of the proceedings, the FTC is entitled to submit evidence which might not otherwise be admissible in support of its motion for emergency injunctive relief. The Court has considered the evidence to which Defendant has objected and afforded it the appropriate weight. The motion is therefore denied.

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Temporary Restraining Order (ECF No. 8) and Application for Appointment of a Temporary Receiver (ECF No. 9) are **DENIED**.

2. Defendant Merchant Services Direct's Motion to Expedite (ECF No. 67) is **GRANTED**.

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER ~ 10

3. Defendant Merchant Services Direct's Motion to Strike (ECF No. 66) is **DENIED**.

4. The restrictions on seeking discovery provided for in F. R. Civ. P. 26(d)(1) are hereby lifted.

5. The parties are directed to confer about available dates for a preliminary injunction hearing. Should the parties agree upon a date, they shall file a joint request on or before **August 16, 2013**. If the parties are unable to agree, they shall file separate requests on or before the same date.

**DATED** August 13, 2013.

*Thomas O. Rice*
THOMAS O. RICE
United States District Judge